JOHN CALLOWAY v. STATE.

No. A-9126.   Jan. 27, 1937.

(64 Pac. [2d] 935.)

294

Louie Gossett and F. L. Welch, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The parties in this opinion will be referred to as they appeared in the trial court. The defendant, John Calloway, was by information charged with forgery in the second degree, the act having been committed by the raising of a check from $8 to $18, and passing the same on Homer McFatridge. He was tried, convicted, and sentenced to serve a term of two years in the state penitentiary.

The evidence on behalf of the state is in substance as follows: Ed M. Taylor stated:

"I live a mile east of Antlers, engaged in farming and stock raising; I bought a yearling from Clyde Maynard, on the 11th day of April, 1935, giving him my check for $8." The check alleged to have been raised was ex-

hibited to the witness, and examined, and witness stated, "I gave this check to Clyde Maynard; it has been raised from $8 to $18, the letters 'een' added after the word 'eight' and the figure '1' placed before the figure '8' in said check. When I received the check from the bank a month later I found it had been raised $10. I went to Mr. Maynard to see him about the check, and from there to see John Calloway. When I met Mr. Calloway he asked to see the check, and looked it over several times, and placed it against the side of the truck and started with his finger rubbing out his signature; I recovered the paid check, and turned it over to the county attorney."

On cross-examination witness admitted he had known the defendant many years, and had many dealings with him, and he had never raised a check on him before. Witness further stated the check had the indorsement of Clyde Maynard, John Calloway, and Homer McFatridge on it when it was received from the bank.

Clyde Maynard testified:

"Ed M. Taylor gave me the check; it was for $8; when I passed the check I indorsed my name on the back of it; I spent the check at John Calloway's store where I bought a sack of meal, John Calloway giving me back $7.35, the sack of meal costing 65 cents." Maynard further stated, "When I signed the check left in his hands it was made out for only $8."

Homer McFatridge, testifying for the state, stated:

"I live at Antlers; I am in the oil business, wholesale agent for the Continental Oil Company; I sell gasoline and motor oils to filling stations and country stores; I know John Calloway; last April I had business dealings with him." Witness examined State Exhibit A, which is the check alleged to have been forged by raising it from $8 to $18, and stated, "I handled the check as my signature is on it. The amount of the check when I got it was $18, and I deposited it in the bank." Witness then

exhibited a deposit slip showing that on April 15, 1935, he made a deposit and among other items was the $18 check the slip showed he had received from the defendant, John Calloway.

Garland Hamby, testifying for the state, stated: "I work for Homer McFatridge of the Continental Oil Company." Witness examined state's exhibit C, which showed an invoice of 50 gallons of bronze, 50 gallons of white gas, and 20 gallons of kerosene, and stated he delivered the gasoline and kerosene mentioned in the invoice to the defendant, John Calloway. Witness was then handed state exhibit A, and states the names on the check, and stated further he at no time altered or changed it in any manner.

Tom Wilkins, another witness for the state, stated he lives east of Rattan, and was acquainted with John Calloway, and also Ed Taylor. John Calloway came to him and requested him to talk to Ed Taylor for him, that Ed was sore at him, and that he wanted a check that had been turned over to Buck Smith, the county attorney, for an investigation. Witness admitted on cross-examination that John Calloway's reputation was good.

A. E. Templeton, testifying for the defendant, stated he heard a conversation between Taylor and the defendant about the check; that Calloway got the check away from Taylor and erased or attempted to erase or rub out something on the check by placing it up against the side of the truck.

G. M. Stallings testified, "I live at Rattan, and have been deputy sheriff in the community where Clyde Maynard lives; I know Ed Taylor."

John Calloway, the defendant, testified on his own behalf and stated, "I have lived at Rattan for 17 years

and for 11 years ran the post office; I know Clyde Maynard and Ed Taylor; I had a conversation with Taylor but I did not try to erase my name from the check." Defendant further stated Ed Taylor traded with him and he had several of Ed's checks before the one in question. "I admit I handled the check introduced as state exhibit A. I have no particular independent recollection of the amount of the check. I do not know who raised it if it had been raised." The defendant then stated witness Maynard was offended at him about a letter that left his place, and had quit trading with him. The defendant admitted he had a conversation with Maynard; he stated he had never been convicted of anything, and that he wished the people would let him alone; that it was a bunch of his enemies after him trying to get him into trouble, and absolutely denied he had anything to do with the raising of the check or passing it after it was raised.

A number of witnesses testified for the defendant, and stated that up to the time of his accusation his reputation in the community was good. Over the objection of the defendant the court permitted a witness, Bill Gardner, in rebuttal to testify he was a deputy sheriff in 1929 and 1930, and had an occasion to arrest the defendant John Calloway on a charge of larceny of domestic animals.

The foregoing is the substance of the testimony.

The defendant in his petition in error has assigned eleven errors alleged to have been committed by the trial court. The first question this court will consider is the tenth assignment of error, which is:

"Said court erred as a matter of law during the trial of said cause in permitting the county attorney to repeatedly question witnesses and answers to be given with

reference to the guilt of the plaintiff in error of the offenses of arson, cattle stealing and drunkenness, and as to charges and accusations against plaintiff in error of these offenses, over the continued and repeated objections of the plaintiff in error, all to the great prejudice of the substantial rights of the plaintiff in error; that on account of the said matters the court should have arrested the judgment of conviction herein, sustained the motion for a new trial or declared a mis-trial of said cause."

The defendant, in presenting his argument on this assignment, states that the testimony admitted was immaterial and improperly admitted. The testimony complained of is as follows (Ed Taylor, a witness for the state, examined by the county attorney):

"Q. Where was that that John came along? A. Between Rattan and the little store over there, I don't know what they call it, Miller's Store. He passed me and I waved him down and I showed him this check. He flew mad and he said he had been accused of burning houses and stealing cattle but never had been convicted. By Mr. Gossett: We object as not being responsive to the question. By the Court: Overruled. By Mr. Gossett: Exceptions. By the County Attorney: Q. What did he say? A. He said he had been accused of stealing cattle and burning houses but he never had been convicted."

On redirect testimony of Clyde Maynard, state witness, the following questions were propounded:

"County Attorney: Q. When you met John Calloway, you and Mr. Taylor, and asked him, you mentioned somebody being about half sore. Did John Calloway get sore? A. Yes, sir. Q. Do you remember any statement he made? A. He said, 'Do you say I raised the check?' I said, 'I don't know whether you raised it or not but it was damn sure raised after you got it.' Q. Was anything said about that? A. He said he had been accused of stealing cows and burning buildings but never had been convicted yet, and said he would go to the penitentiary 99 years before

he would give Ed Taylor's money back. By Mr. Gossett: We move that that be stricken as incompetent, irrelevant and immaterial. Such statements, if your Honor please, are prejudicial. (At this time counsel confer with the court out of the hearing of the jury and the court reporter.) Mr. Smith: Q. What did you say Mr. Calloway said in reference to that, I didn't quite understand you? A. He said he had been accused of— By Mr. Gossett: We object to that. A. —of stealing and everything. By the Court: Overruled. By Mr. Gossett: Exception. A. He had been accused of cattle stealing and burning buildings and most everything but never had been convicted yet. He said he would go to the penitentiary 99 years before he would give Ed Taylor his $10.00 back. By Mr. Welch: We move that it be stricken as prejudicial. By the Court: Overruled. By Mr. Welch: Exceptions."

The witness Tom Wilkins, on redirect examination, was asked the following questions by the county attorney:

"Q. I will ask you if you ever hear rumor of anything in the community about him violating the law? A. Nothing but this check is all I ever heard. Q. Never did hear anything else? A. No, sir. Q. Now, do you recall— A. Not ever been arrested. Q. Did you ever hear rumor of any talk in the community about him being connected with any cattle stealing? A. There was some talk about that. (Objection—Overruled—Exception.) Q. Don't you know it to be a fact that he was arrested for stealing cattle with Cecil Harris? A. I don't think he was arrested. (Objection—Overruled—Exception.) Q. If it should develop in this case that Mr. Calloway was arrested and brought to trial here, charged with Cecil Harris, if that should develop that you are mistaken? A. I know they were trying to implicate him but if he was arrested I don't remember it. Q. Do you remember anything about any building being burned in which he was implicated and released? A. There was some talk, yes, sir. Q. Did you ever see him drunk? A. No. Q. You would swear to the jury that you never saw him drunk? (Objection—Overruled—Exception.) Q. If it should develop

that he has been charged with theft of cattle down there and that had been rumored around and talked, and that should be true, then you still say his reputation is good? A. Yes, sir. * * * * Q. Do you remember some talk about a building being burned that he was accused of burning? A. Carl Cooper's store. Q. That is his competitor? A. Yes, sir. Q. Explain to the jury if you remember what you heard in your community about the cow stealing case? A. I don't recollect just about that cow case. I know there was a lot of talk at that time about the cattle being stolen and John being implicated. Q. They were supposed to have been trucked out of that community, wasn't they? A. Yes, sir. Q. And you still say in spite of all that talk that went through the community, that he still bore a good reputation in the community? A. Yes, sir."

Over the objection of the defendant, the court permitted Bill Gardner, a witness for the state, to testify as follows:

"I was deputy sheriff during 1929 and 1930. Q. I will ask if you had occasion to arrest John Calloway? Mr. Gossett: We object to that. John Calloway admitted it. The Court: Overruled. Mr. Gossett: Exceptions. A. Yes, sir. Q. Tell the jury what for? A. Larceny of domestic animals. Mr. Welch: We object to that as incompetent, irrelevant, immaterial and prejudicial. The Court: Overruled. Mr. Welch: Exceptions."

The defendant insists that the foregoing testimony offered by the trial court, over his objections, and to which exceptions were saved, and the repeated propounding of questions and soliciting testimony which was prejudicial to the rights of the defendant, was prejudicial to the rights of the defendant, and deprived him of securing a fair and impartial trial. Counsel have no right to inquire of a witness whether or not he has been arrested upon a criminal charge. A witness can only be asked for the purpose of affecting his credibility if he has been convicted of a crime. Corliss v. State, 12 Okla. Cr. 526, 159 Pac. 1015.

For the purpose of affecting the credibility of a defendant as a witness it is prejudicial error for the court to require the defendant to answer on cross-examination as to his having been charged with other offenses. Byars v. State, 15 Okla. Cr. 308, 176 Pac. 253.

This court has repeatedly held that for the purpose of affecting the credibility of a witness he may be asked on cross-examination if he has been convicted of a felony or of any crime which involves moral turpitude. But it is prejudicial error to ask such witness if he has been indicted, arrested, or imprisoned for a misdemeanor, or if he has been charged, arrested, or imprisoned, before conviction, of any offense whatever. Nelson v. State, 3 Okla. Cr. 468, 106 Pac. 467.

In Nelson v. State, supra, the holding of the court has been followed and approved in the following cases: Crawford v. Ferguson, 5 Okla. Cr. 377, 115 Pac. 278, 45 L. R. A. (N.S.) 519; Keys v. United States, 2 Okla. Cr. 647, 103 Pac. 874; Smith v. State, 14 Okla. Cr. 348, 171 Pac. 341.

In Jones v. State, 20 Okla. Cr. 154, 201 Pac. 664, 665, in the fourth paragraph of the syllabus this court said:

"Unless the defendant himself puts his good character in issue, it is not admissible, on cross-examination of the defendant, to interrogate him as to the commission of other particular crimes or offenses not connected with the crime for which he is being tried. If the good character of the defendant is made an issue by the defendant, it may be impeached only by showing that his general reputation was bad, and not by evidence of particular acts."

The testimony complained of by the defendant does not relate to the general reputation, but relates to spe-

cific acts of the defendant not material to or in any way connected with the crime for which he was on trial, and it is perfectly clear from the holding of this court, and other courts, that the testimony complained of by the defendant was prejudicial to his rights, and the court, in admitting the same over his objections, committed a reversible error.

Several errors have been assigned and argued by the defendant, but in the view we take of this record the error herein discussed is the only error necessary to consider. The admission of the testimony, over the objection of the defendant, that the defendant had been arrested for different crimes not connected with the crime for which he was on trial, is reversible error. The defendant was not accorded a fair and impartial trial as guaranteed to him by the Constitution of the United States, and the state of Oklahoma.

For the reasons stated, the case is reversed and remanded.

DOYLE and BAREFOOT, JJ., concur.